**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Hope Jamison, Sterling Taylor, Paulette Jones, Sonya Graves, and Kenneth Graves, Defendants,

Of whom Hope Jamison, Sonya Graves, and Kenneth Graves are the Respondents,

and Paulette Jones is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2017-001699

Appeal From Charleston County
Daniel E. Martin, Jr., Family Court Judge

Unpublished Opinion No. 2019-UP-033
Submitted December 14, 2018 – Filed January 14, 2019

**AFFIRMED**

Mary-Patricia Crawford, of Walterboro, for Appellant.

Susan Michelle Chang, of Chang Family Law, of Charleston; and Regina T Parvin, of South Carolina Department of Social Services, of Charleston, for Respondent South Carolina Department of Social Services.

Bradford C. Andrews, of The Law Office of Bradford C. Andrews, LLC, of Charleston, for Respondent Hope Jamison.

Audrey Rebecca Brown, of A.R. Brown Law Firm, LLC, of Charleston, for Respondents Sonya and Kenneth Graves.

Joshua Keith Roten, of Summerville, for the Guardian ad Litem.

---

**PER CURIAM:**  Paulette Jones (Grandmother) appeals a family court order leaving physical custody of her minor grandchildren (Twins) with Sonya Graves (Foster Mother) and Kenneth Graves (collectively, Foster Parents).  On appeal, Grandmother argues the family court erred in (1) allowing Foster Parents to intervene in the removal action filed by the Department of Social Services (DSS), (2) returning Twins to the physical custody of Foster Parents based on the lack of a paternity test, and (3) ordering Twins to remain in Foster Parents' custody when Grandmother was an approved custodian.  We affirm.

Twins were placed in emergency protective custody at birth after Hope Jamison (Mother) and Twins tested positive for cocaine.  In May 2016, they were placed in Foster Parents' home.

On August 4, 2016, the family court issued an order finding Grandmother was Twins' paternal grandmother and a proposed placement resource.  Because Grandmother lived in North Carolina, the family court ordered DSS to seek a home study and expedited placement decision through the Interstate Compact for the Placement of Children (ICPC).[1]  On September 6, 2016, the family court issued a final merits removal order; the order added Grandmother as a party, ordered DSS

---

[1] S.C. Code Ann. §§ 63-9-2200 to -2290 (2010).

to complete an expedited ICPC, and provided DSS could place Twins with Grandmother without another court hearing if the ICPC was positive.

On November 10, 2016, Twins were removed from Foster Parents' home and placed with Grandmother after a favorable home study through the ICPC. On November 15, 2016, Foster Parents filed a motion to intervene in the DSS removal action. Following a hearing, the family court issued an order on November 21, 2016, allowing Foster Parents to intervene pursuant to section 63-7-1700(J) of the South Carolina Code (Supp. 2018),[2] ordering Sterling Taylor (Father) to submit to a paternity test, and ordering Twins returned to Foster Parents' home by November 18. The court found reunification was still the plan, and another motion regarding Twins' placement could be filed if paternity was established. Grandmother appealed the November 21 order, but her appeal was dismissed on April 19, 2017, because she did not provide an update on the status of the transcript.

On November 18, 2016, Father submitted DNA for a paternity test; the results established he was Twins' biological father. On March 2, 2017, Grandmother and Father filed a joint motion to return Twins to Grandmother. A hearing was set for April 13, but the motion was dismissed without prejudice because the parties were not properly served. On May 19, 2017, Grandmother and Father filed a second joint motion to return Twins to Grandmother. Foster Parents filed a return asserting Twins were returned to them around November 22, 2016, and it was in Twins' best interest to remain with Foster Parents. Foster Mother filed a supporting affidavit asserting Twins had lived with them since May 2016, apart from a brief period when they lived with Grandmother; Foster Parents hoped to adopt Twins; and it was not in Twins' best interest "to turn them over to someone who [was] essentially a stranger when they [could] stay with [Foster Parents]."

On June 29, 2017, the family court held a hearing on Father and Grandmother's joint motion. Father and Grandmother did not submit any affidavits. Counsel for Father and Grandmother asserted Father wanted Twins placed with Grandmother, and placing them with Grandmother was in their best interest because Grandmother was a relative and the ICPC was favorable. Mother joined in

---

[2] This subsection, which is part of the permanency planning statute, provides, "A named party, the child's guardian ad litem [(the GAL)], or the local foster care review board may file a motion for review of the case at any time. Any other party in interest may move to intervene in the case pursuant to the rules of civil procedure and if the motion is granted, may move for review. Parties in interest include . . . the foster parent."

Grandmother and Father's motion.  DSS did not take a position on Twins' placement; however, it requested a permanency planning hearing, noting that was delayed by Grandmother's appeal.  DSS also noted the ICPC had expired, and it could not monitor Twins in North Carolina without another ICPC.

The GAL explained she recommended placement with Grandmother at the November 2016 hearing because Grandmother "came forward relatively early in the case[,] . . . had an adequate home," and "had done everything right."  However, her recommendation changed in the seven months after that hearing because Twins had lived with Foster Parents "almost all of their [fourteen] months of life" and were thriving.  The GAL noted her recommendation at the permanency planning hearing would "most likely be termination of parental rights (TPR) and adoption."

On July 14, 2017, the family court issued an order denying Grandmother and Father's motion.  The court determined Twins had been in Foster Parents' custody "for fourteen months except for the brief period of time they were placed with their [Grandmother]," the GAL recommended Twins remain with Foster Parents, DSS did not take a position on placement, and remaining with Foster Parents was in Twins' best interest.  This appeal followed.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

Grandmother first argues Foster Parents did not have standing to intervene.  Specifically, she contends the family court erred in finding Foster Parents had standing under section 63-7-1700(J) because the plain language of the statute only allows foster parents to intervene to request a review of a permanency plan; it does not allow former foster parents "to intervene to request return of former foster children to their physical custody." Grandmother next argues the family court erred in relying on the lack of established paternity in placing Twins with Foster Parents in the November 2016 order because paternity was never contested.

This court cannot consider the intervention or placement decision from the November 2016 order because Grandmother's appeal of that order was dismissed before it was perfected.  The November 2016 order was issued after the merits

order and addressed physical custody of Twins.  Although Grandmother timely appealed the November 2016 order, that appeal was dismissed because she did not provide an update on the status of the transcript.  Thus, Grandmother's arguments regarding Foster Parents' intervention and the placement decision in the November 2016 order are not properly before this court.[3]  *See Hooper v. Rockwell*, 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999) ("[A]ny order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order that a party must timely appeal."); *id*. at 292, 513 S.E.2d at 364 (providing a party must "timely appeal any subsequent orders of the family court regarding the custody of [the] children or the treatment plan" for the appellate court to consider it); *Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653-54 (2006) (providing an "unappealed ruling is the law of the case and requires affirmance").

However, this court can consider the placement decision from the July 2017 order because that order was timely appealed, and the appeal from that order was perfected.  Based on the information before the family court at the June 2017 hearing, the family court properly continued placement with Foster Parents.  At the time of the July hearing, Twins had lived with Foster Parents for fourteen months—almost all of their lives—and were doing well in that home.  In contrast, they did not have an opportunity to visit Grandmother and bond with her.  More crucial, however, was the fact the family court did not have any current information regarding the current suitability of Grandmother's home.  DSS indicated the ICPC had expired, and Grandmother and Father did not submit any affidavits at the hearing.  Because the family court did not have any information concerning the current status of Grandmother's home, maintaining placement with Foster Parents was in Twins' best interest.

We are troubled Twins remained in foster care for more than a year without the family court holding a permanency planning hearing.  *See* S.C. Code Ann. § 63-7-1700(A) (Supp. 2018) (providing the family court must "review the status of a child placed in foster care . . . to determine a permanent plan for the child" within one year of the child entering foster care).  According to DSS, the permanency planning hearing was delayed by Grandmother's prior appeal. However, pursuant to the permanency planning statute, the family court retains

---

[3] The proper procedure for foster parents wishing to challenge a placement decision made by DSS is through an administrative appeal.  *See* S.C. Code Ann. Regs. 114-140 (2012) (providing foster parents have the right to an administrative appeal of the removal of a foster child by DSS).

jurisdiction to conduct a permanency planning hearing even if the parties appeal another order in the removal action.  *See* S.C. Code Ann. § 63-7-1700(K) (Supp. 2018) ("The pendency of an appeal concerning a child in foster care does not deprive the court of jurisdiction to hear a case pursuant to this section.  The court shall retain jurisdiction to review the status of the child and may act on matters not affected by the appeal.").  Twins have now been in foster care for more than thirty months, and they need permanency; thus, we urge the family court to conduct a permanency planning hearing expeditiously.[4]  At the permanency planning hearing, the GAL shall provide an updated report, and the family court shall review the status of Mother's and Father's progress on their placement plans and the status of the ICPC for Grandmother.  The family court shall also determine a permanent plan for Twins, which can include: (1) full custody to Grandmother with closure after the statutory monitoring period required by ICPC, (2) continued working with one or both parents while Twins reside with Grandmother or Foster Parents, or (3) TPR and adoption by Grandmother or Foster Parents.

**AFFIRMED.**[5]

**KONDUROS, MCDONALD, and HILL, JJ., concur.**

---

[4] We recognize a permanency planning hearing may have been held in the interim between the final order and this appeal.  If so, this opinion should not be construed as requiring an additional permanency planning hearing.

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.